# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FIRST FLO CORPORATION | ) | Case No.  18- |
| EIN: 84-0725524 | ) | |
| | ) | Chapter 11 |
| Debtor | ) | |
| | ) | |

## PLAN OF REORGANIZATION DATED DECEMBER 17, 2018

Duncan E. Barber, #16768
Julie Trent, #17086
SHAPIRO BIEGING BARBER OTTESON
  LLP
7979 E. Tufts Avenue, Suite 1600
Denver, Colorado 80237
Telephone (720) 488-0220
Facsimile (720) 488-7711
Email:  dbarber@sbbolaw.com
        jtrent@sbbolaw.com
Attorneys for Debtor

## INTRODUCTION

First Flo Corporation ("Debtor"), hereby proposes the following Plan of Reorganization dated December 17, 2018 ("Plan"), pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.

This Plan provides for the repayment of Creditors' Allowed Claims through the restructure of the Senior Debt, payment to the holders of TruPS Claims and the cancellation of the remaining amounts due to the holders of TruPS Claims and compromise and satisfaction of the TruPS Trustee Fees from the proceeds generated by a new capital raise from those pre-petition shareholders who elect to make a new cash capital contribution to the Post-Confirmation Debtor. A more complete explanation of Debtor's business and of this Plan of Reorganization is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all Creditors who intend to cast a ballot for or against this Plan of Reorganization and all other parties in interest.

## ARTICLE 1
## DEFINITIONS AND RULES OF CONSTRUCTION

A.    **Definitions**.  In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

1.1.    **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Bankruptcy Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

1.2.    **"Allowed Claim"** means (i) an unsecured claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this Case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by Order or Judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending, or (ii) a Claim allowed by final, non-appealable order of the Bankruptcy Court.

1.3.    **"Allowed Class 2 Claim"** means the Class 2 Claim that is an Allowed TruPS Claim.

1.4.    **"Allowed Secured Claim"** means an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Bankruptcy Code 553, to the extent the value of the interest of the holder of any such allowed claim and Debtor's interests in such property or to the extent of the amount subject to such setoff as the case may be, as determined in accordance with Bankruptcy Code 506(a).

1.5.    **"Bank"** means Rocky Mountain Bank & Trust, a Colorado corporation, a wholly-owned subsidiary of Debtor.

1.6.    **"Bankruptcy Case"** means *In re First Flo Corporation*, Case No. 18-_____, to be filed in the United States Bankruptcy Court for the District of Colorado.

1.7.    **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

1.8.    **"Bar Date"** means the date or dates fixed by the Bankruptcy Court by which Persons asserting a Claim against, or Equity Interest in, the Debtor (except Administrative Expenses, Professional Fee Claims and Claims arising from the rejection of Executory Contracts) are required to file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in the Debtor or its property, from voting on the Plan, and from sharing in distributions under the Plan.

1.9.    "**Bondholder**" means U.S. Capital Funding VI, Ltd., an exempted company with limited liability formed under the laws of the Cayman Islands, as the sole owner of the TruPS Capital Securities.

1.10.    **"Claim"** has the meaning of that term in Bankruptcy Code § 101(5).

1.11.    **"Claims Objection Bar Date"** means the date which is 120 days following the Effective Date, unless extended by order of the Bankruptcy Court on motion filed within such 120 day period.

1.12.    **"Class"** means any class into which Allowed Claims are classified pursuant to the Plan.

1.13.    **"Class 2 Claim"** shall mean the Claims set forth in Sections 2.3 and 3.4 of this Plan.

1.14.    **"Code"** means the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, and any amendments thereof.

1.15.    **"Confirmation"** means entry of a Final Order confirming this Plan in accordance with § 1129 of the Bankruptcy Code.

1.16.    **"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Court.

1.17.  "**Confirmation Hearing**" means the duly noticed hearing held by the Bankruptcy Court to consider confirmation of the Plan. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the adjourned date of the Confirmation Hearing.

1.18.  "**Confirmation Order**" means the Order issued and entered confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.19.  "**Contested Claim**" means any Claim which has been scheduled by the Debtor as disputed, contingent, or unliquidated or any Claim as to which an objection to the allowance thereof has been or will be filed within the deadline for filing of such objections set forth in Section 6.3 of this Plan.  Contested Claims shall be treated under the provision of Section 6.3 of this Plan until allowance of disallowance of such Claim has been determined by a Final Order. Contested claims further include any Claims held by Creditors against whom the Debtor believes actions may be brought under Sections 544, 547, 548 or 549 of the Bankruptcy Code.

1.20.  "**Contingent Senior Debt Payment**" means the $1,000,000.00 payment that may be paid to the holders of the Senior Debt in the event the Bank is sold pursuant to Section 3.3(A)(v) below.

1.21.  "**Court**" or "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Colorado in which the Case, pursuant to which this Plan is proposed, is pending and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

1.22.  "**Creditor**" has the meaning of that term in Bankruptcy Code § 101(10).

1.23.  "**Creditor Distribution Account**" means the checking account that the Post-Confirmation Debtor shall establish upon occurrence of the Effective Date and into which the Gross Capital Proceeds and any other funds to implement the Plan will be deposited and from which distributions to the Holders of Allowed Administrative Claims and Allowed Claims in Class 2 will be made in accordance with this Plan.

1.24.  "**Debtor**" means First Flo Corporation, a Colorado corporation.

1.25.  "**Delaware Trustee**" means Wilmington Trust, as Delaware trustee under the TruPS Documents.

1.26.  "**Disclosure Statement**" means the Disclosure Statement which is approved by the Court according to Bankruptcy Code §1125 to be utilized to solicit votes for this Plan.

1.27.  "**Effective Date**" means the date upon which the conditions in Article 8 have been satisfied.

1.28.  "**Estate**" shall mean the estate created and existing in this Case pursuant to Bankruptcy Code § 541.

1.29.  "**Executory Contract**" shall mean any executory contract or unexpired lease of real or personal property, as contemplated by §§ 365, 1113, 1114 of the Bankruptcy Code, in

effect on the Petition Date, between Debtors and any Person, and including, without limitation, any written employment agreements or plans and employee benefit plans and agreements.

1.30.    **"Equity Interests"** means any interest in Debtor represented by any class or series of common or preferred stock issued before the Effective Date, and any warrants, options, or rights to purchase any such common or preferred stock.

1.31.    **"Final Order"** means an order or a judgment as to which the time to appeal or seek review or rehearing has expired.  In the event that an appeal or petition for rehearing is filed, an order or judgment shall be final unless an Order enters granting a stay pending appeal or petition for rehearing.

1.32.    "**Guarantee Trustee**" shall mean Wilmington Trust, as guarantee trustee under the TruPS Documents.

1.33.    "**HARE & CO.**" means Hare & Co., LLC, a Delaware limited liability company.

1.34.    **"Indenture Trustee"** means Wilmington Trust, as indenture trustee under the TruPS Documents.

1.35.    **"Insider"** means any person or entity defined in Bankruptcy Code § 101(31)(B).

1.36.    **"Maturity Date"** means ten (10) years from the date of the Effective Date.

1.37.    **"New Capital Contributions"** means the contributions of new cash in Debtor in an amount required to pay, collectively, Allowed Administrative Claims and the payments specified herein to Class 2 by Participating Investors in connection with the Offering.

1.38.    **"Non-Participating Shareholder"** means those persons who are holders of Debtor's Equity Interests who elect to not be a Participating Investor.

1.39.    "**Offering**" means the offering to Holders of the Equity Interests to make New Capital Contributions to Debtor pursuant to this Plan.

1.40.    "**Outside Date**" means the date that is 180 days after the Confirmation Date.

1.41.    **"Participating Investors"** mean those persons making New Capital Contributions to Debtor in the Offering.

1.42.    **"Person"** means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

1.43.    **"Petition Date"** means the date on which the Case is commenced under Bankruptcy Code § 301, by Debtor's filing of its voluntary petition.

1.44.    **"Plan"** means this Plan of Reorganization dated December 17, 2018.

1.45.   **"Post-Confirmation Debtor"** means the Debtor after the occurrence of the Effective Date pursuant to Article 8 of the Plan.

1.46.   **"Post Confirmation Management"** means those individuals identified in Section 5.3 of the Plan.

1.47.   **"Pro Rata"** means with respect to any holder of an Allowed Claim, the proportionate amount that such Allowed Claim bears to the aggregate amount of the Allowed Claims in the relevant Class.

1.48.   **"Proceeds"** means the cash raised from the Participating Investors in the Offering as provided in the Plan.

1.49.   **"Professional"** means a Person: (a) employed in the Bankruptcy Case in accordance with an order of the Bankruptcy Court under §§ 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services under §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for whom compensation and reimbursement has been Allowed by a Final Order under § 503(b) of the Bankruptcy Code.

1.50.   **"Professional Fee Claims"** mean an Administrative Expense for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with §§ 327, 328, 330, 331 or 503(b) of the Bankruptcy Code.

1.51.   **"Property Trustee"** means Wilmington Trust, as property trustee under the TruPS Documents.

1.52.   **"Reorganized Debtor"** means Debtor following the occurrence of the Effective Date.

1.53.   **"Rules"** mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

1.54.   **"Senior Debt"** means the debt outstanding as of the Petition Date under that certain Loan Agreement between Debtor, as borrower, and Gideon Management, LLC, an Illinois limited liability company, and Micah 68, LLC, an Illinois limited liability company, as lenders, as amended or supplemented from time to time.

1.55.   **"Senior Debt Holders"** mean the holders of the Senior Debt on the Effective Date.

1.56.   **"Senior Debt Parties"** means the Senior Debt Holders; PT Financial, LLC, an Illinois limited liability company; PT Financial Companies, LLC, a Delaware limited liability company, PT Asset Management, LLC, an Illinois limited liability company, Performance Trust Capital Partners, an Illinois limited liability company; PT2 LLC, an Illinois limited liability company; PT INV, LLC, an Illinois limited liability company; PT Capital Partners Limited, a Hong Kong limited corporation; PTAM Holdings, LLC, an Illinois limited liability company; Reber Capital, LLC, a Delaware limited liability company; Phil Nussbaum, an individual; Richard Berg, an individual, and all of their respective officers, directors, employees and agents.

1.57. **"Transaction Value"** shall mean the total fair market value of all cash and any securities or other property or noncash consideration, including without limitation, any note from the purchaser, any funds paid from escrow or any earn-out payments received, receivable, paid or payable, directly or indirectly, by Debtor or any holders of Debtor's outstanding securities, including holders of options, warrants, stock appreciation rights or other rights to purchase or acquire securities, but expressly excluding the assumption or retirement of any of any debt or other liabilities or obligations of the Bank.

For purposes hereof, the fair market value of any securities or noncash consideration will be the value as reasonably determined by Debtor on the day prior to the consummation of a transaction; provided, however, that if such securities consist of securities with an existing public trading market, the value thereof shall be determined by the average of the last sales prices for such securities on the five (5) trading days ending five (5) calendar days prior to such date.

1.58. **"TruPS Capital Securities"** mean the $3,250 aggregate liquidation amount of the Fixed/Floating Rate Capital Securities issued by Trust I pursuant to the TruPS Trust Declaration.

1.59. **"TruPS Claims"** mean any and all Claims that could be asserted against Debtor by the Bondholder or by Wilmington Trust, in its capacity as trustee on behalf of the Bondholder, other than TruPS Trustee Fees, including any Claims related to or arising out of the TruPS Documents which Claims include, but are not limited to principal and interest as of the Petition Date, and if applicable, postpetition interest.

1.60. **"TruPS Common Securities"** mean the common securities issued by Trust I, which is governed by the TruPS Trust Declaration.

1.61. **"TruPS Documents"** shall mean the TruPS Indenture, the TruPS Trust Declaration, the TruPS Note, the TruPS Common Stock, and TruPS Guarantee and any related and ancillary documents and instruments.

1.62. **"TruPS Guarantee"** shall mean the Guarantee Agreement dated as of March 29, 2007 by Debtor, as guarantor, and Wilmington Trust, as guarantee trustee, pursuant to which the Debtor agreed to guarantee payments of all amounts owed to holders of securities issued pursuant to the TruPS Indenture and the TruPS Trust Declaration.

1.63. **"TruPS Indenture"** means the Indenture between Debtor, as issuer, and Wilmington Trust, as trustee, dated as of March 29, 2007 (as amended and/or supplemented) pursuant to which the Debtor issued the Fixed/Floating Rate Junior Subordinated Debt Securities Due 2037.

1.64. **"TruPS Trust Declaration"** shall have the meaning set forth in the definition of Trust I.

1.65. **"TruPS Trustee Charging Lien"** means any lien or other priority in payment arising prior to or after the Effective Date to which the TruPS Trustees, including but not limited to, the Indenture Trustee is entitled, against distributions to the Holders of TruPS Claims under the TruPS Documents, for payment of the TruPS Trustee Fees.

1.66. "**TruPS Trustee Fees**" means the Claims for reasonable compensation, fees, expenses, disbursements, indemnification, subrogation and contribution of the TruPS Trustees, including but not limited to the Indenture Trustee, including, without limitation, internal default fees, attorneys', financial advisors' and agents' fees, expenses and disbursements, incurred by or owed to the TruPS Trustees, whether prepetition or postpetition, or whether prior to or after consummation of the Plan. TruPS Trustee Fees accrued after the Petition Date are deemed Administrative Claims in accordance with the terms of the TruPS Documents, including the TruPS Indenture.

1.67. "**TruPS Note**" means the Fixed/Floating Rate Junior Subordinated Debt Securities due 2037.

1.68. "**TruPS Trustees**" mean the Indenture Trustee, Delaware Trustee, Guarantee Trustee and the Property Trustee.

1.69. "**Trust I**" means RMBT Capital Trust I, a statutory trust created under the laws of the State of Delaware pursuant to that certain Amended and Restated Declaration of RMBT Capital Trust I dated as of March 29, 2007 (as amended and/or supplemented) by and among Wilmington Trust, as Delaware trustee and institutional trustee, the Debtor as sponsor, and the Administrators named therein (the "**TruPS Trust Declaration**"), for the sole purpose of issuing securities representing undivided beneficial interests in Trust I's assets.

1.70. "**Unclassified Claims**" mean claims pursuant to Bankruptcy Code §§507(a)(2), (3) or (8) and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code.

1.71. "**Wilmington Trust**" means Wilmington Trust Company, a Delaware trust company, and its successors and assigns.

1.72. **Other Defined Terms.** Any term used in the Plan that is not defined in the Plan, but that is used in the Code or Bankruptcy Rules, has the meaning assigned to that term in the Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

## ARTICLE 2
## DESIGNATION OF CLAIMS AND INTERESTS

2.1. **Introduction**. Debtor is the proponent of the Plan. The Plan provides for the repayment of certain unclassified Allowed Claims and the Allowed Claims of the Classes set forth below.

In accordance with § 1123(a)(1) of the Bankruptcy Code, Unclassified Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth in Section 3.1 of the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class. A Claim may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular class only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The following is a designation of all classes of Claims and interests other than Unclassified Claims.

2.2.  **Class 1**.  Class 1 consists of the Allowed Claim of the Senior Debt Holders.

2.3.  **Class 2**.  Class 2 consists of the Allowed Claims of the Holders of the TruPS Claims.

2.4.  **Class 3**.  Class 3 consists of the Equity Interests.

**ARTICLE 3**
**SPECIFICATION AND TREATMENT OF UNCLASSIFIED**
**PRIORITY CLAIMS AND SECURED TAX CLAIMS**

3.1.  **Unclassified Claims**.

A.  **Administrative Claims**.  Each allowed Administrative Claim shall be paid on the Effective Date from the Proceeds in cash in the amount of such Allowed Administrative Claim, except to the extent that the Holder of such Administrative Claim has agreed, in writing, to a different treatment of such Administrative Claim; provided, however, that postpetition trade debt, wages, commissions, taxes and other accrued expenses shall be paid by Debtor in the ordinary course of business following Confirmation to the extent not previously paid.  All payments for Professional Fee Claims shall be subject to approval of the Bankruptcy Court.  Any Administrative Claim not Allowed as of the Effective Date but Allowed thereafter, shall be paid within ten days after such Administrative Claim becomes an Allowed Administrative Claim.  It is believed that the only Administrative Claims are fees payable to the United States Trustee and Professional Fee Claims.

3.2.  **Unsecured Priority Tax Claims**.  The Allowed Claims of a type specified in Bankruptcy Code § 507(a)(8), Claims of governmental taxing authorities, shall be paid in full in the ordinary course of business following the Effective Date.  Debtor believes that there are no Priority Tax Claims that are not offset by Debtor's net loss carryforwards, which are expressly preserved under this Plan for the benefit of Debtor following the Effective Date.

3.3.  **Classified Claims and Interests.**

A.  **Class 1 Claim – Senior Debt Holders**.  The Class 1 Claim shall be Allowed in a reduced amount of up to $3,000,000.00, of which the Contingent Senior Debt Payment shall only be paid pursuant to Section 3.3(A)(v) below.  The Senior Debt shall be modified on the following terms:

i.  The Senior Debt, excluding the $1,000,000 maximum amount of the Contingent Senior Debt Payment, shall bear simple interest at a rate of six percent (6%) per annum commencing on the Effective Date and continuing thereafter until paid in full.

ii.  The Senior Debt, excluding the $1,000,000 maximum amount of the Contingent Senior Debt Payment, shall be due and payable on the Maturity Date.

9

There is no prohibition against pre-payments of the Senior Debt, provided however, that prepayment shall not eliminate the Contingent Senior Debt Payment.

iii.     Quarterly interest only payments shall be made by Debtor on each of March 31, June 30, September 30 and December 31 to the Senior Debt Holders beginning on the earlier of (i) the date that the next quarterly payment is due following receipt of approval from the FDIC allowing the Bank to pay dividends to Debtor and Debtor is no longer subject to any legal or regulatory restrictions that prohibit or otherwise limit making such payments, or (ii) three years from the Effective Date.

iv.     In the event that Debtor is permitted to, and does, declare and pay dividends on its capital stock, then an amount equal to the amount of such paid dividends shall be a mandatory prepayment of the Senior Debt, excluding the $1,000,000 maximum amount of the Contingent Senior Debt Payment.

v.     If, prior to the later of (x) Maturity Date or (y) the date upon which the Senior Debt is paid in full, Debtor sells all or substantially all of its assets or the assets of the Bank, then Debtor shall be obligated to make payment on the Contingent Senior Debt Payment, the amount to be determined as follows:

a.  if the Transaction Value received by either Debtor or its shareholders in the transaction is less than $3,000,000, then the amount is $0;

b.  if the Transaction Value received by either Debtor or its shareholders in the transaction is between $3,000,001 and $5,000,000, then the amount is $500,000; or

c.  if the Transaction Value received by either Debtor or its shareholders in the transaction is $5,000,001 or more, then the amount is $1,000,000.

vi.     Debtor is prohibited from selling or encumbering its interest in the Bank unless the holders of the Class 1 Claim are paid in full in cash at closing or otherwise consent.  The Contingent Senior Debt Payment is payable only if Debtor sells all or substantially all of its assets or the assets of the Bank.

Class 1 is impaired and is entitled to vote on the Plan.

**3.4     Class 2 Claims of TruPS Claims –**The Class 2 Claims shall be an Allowed Claim in the aggregate amount owing under the TruPS Documents, which amount is not less than $5,000,000.00.  In full satisfaction of the Allowed Claim of Class 2, holders of the TruPS Capital Securities shall receive its Pro Rata share of $320,000.00 in cash upon the deemed surrender of the TruPS Capital Securities in accordance with Section 5.4, which amount shall be paid in accordance with Section 5.7 promptly following the occurrence of the Effective Date. Debtor, as holder of the TruPS Common Securities shall not be entitled to any distribution on account of their TruPS Claim.  Class 2 is impaired and Holders of Allowed Claims in Class 2 are

entitled to vote on the Plan.  By voting in favor of this Plan, the Bondholder shall be deemed to have represented and warranted to Debtor and to the TruPS Trustees that Bondholder is the sole owner, with both legal and equity title, of 100% of the TruPS Capital Securities and has the sole right to receive payment of the $320,000.00 in cash payment provided for in this Section 3.4.

**3.6     Class 3 Claim – Equity Interests**.  Class 3 consists of the Equity Interests in Debtor held as of the Petition Date.  Upon the Effective Date, in exchange for the New Capital Contribution, each Participating Investor shall retain their respective Equity Interests.  The Equity Interests of Holders who are not a Participating Investor shall have their Equity Interests cancelled by Debtor and such Holders shall no further interest in Debtor.  Class 3 is impaired, is deemed to have rejected the Plan and is not entitled to vote on the Plan.  The Holders of Equity Interests shall receive no distribution under the Plan except as provided in the connection with the Offering.

**3.7     Reservation of Rights Regarding Claims**.  Except as otherwise explicitly provided in the Plan, nothing shall affect Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.  For the avoidance of doubt, the allowance of the Class 1 Claim as provided in Section 3.3(A) shall be final and binding upon Debtor and the Reorganized Debtor.

**ARTICLE 4**
**[RESERVED]**

**ARTICLE 5**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

5.1.     **New Capital Contributions.**  Debtor shall conduct the Offering to raise the Proceeds.  In the Offering, the Holders of Debtor's Equity Interests will be entitled to make a New Capital Contribution to Debtor and in exchange will be entitled to retain their respective Equity Interests.  Non-Participating Shareholders shall have their Equity Interests cancelled by Debtor and such Holders shall have no further interest in Debtor.  Participating Investors will have the option, as determined by Debtor, to make additional Capital Contributions to Debtor in proportion to their pre-petition ownership of Debtor's Equity Interests and such Participating Investors shall receive additional Equity Interests in Debtor as needed to satisfy the Conditions to Confirmation.  The Offering will commence and be governed by the Plan of Offering attached hereto as Exhibit 1. Within fifteen (15) Business Days of completion of the Offering, Debtor shall file with the Bankruptcy Court and serve on all parties in interest a Report of the Offering.

5.2.     **Securities Law Compliance; Post-Effective Date Sales of Equity Interests**.  Subject to approval by the Bankruptcy Court, the Confirmation Order shall provide that the Offering, to the extent it requires compliance with state and federal securities laws, including without limitation the Securities Act, is entitled to the exemption from registration provided under Bankruptcy Code section 1145.  Post-Effective Date sales of the stock shall be governed by applicable non-bankruptcy law.

5.3.     **Post-Effective Date Corporate Governance**.   Upon the Effective Date, the Management shall consist of Douglas McClure who shall serve as Chief Executive Officer and Chairman of the Board of Directors and Dale Pike who shall serve as Secretary/Treasurer.  The Pre-Petition Articles of Incorporation and Bylaws shall govern the Reorganized Debtor following the occurrence of the Effective Date consistent with applicable federal and state laws and regulation.

5.4.     **Cancellation of Debt.**  Except as provided herein, all notes, instruments, other securities, and other evidence of debt issued, including but not limited to the TruPS Capital Securities, issued by Debtor shall be deemed terminated and cancelled upon the Effective Date. For the avoidance of doubt, but subject to paragraph A below, on the Effective Date, the TruPS Documents shall be deemed terminated and canceled, Trust I shall be deemed terminated and dissolved and the TruPS Trustees shall be discharged and released without any further action, provided however, at the discretion of the TruPS Trustees, Debtor shall cooperate in filing any required certificate of cancellation or other document or certificate required by the TruPS Documents.

A.     Notwithstanding the foregoing and anything contained in the Plan, the TruPS Documents, including the TruPS Indenture, shall continue in effect to the extent necessary to (i) allow the Post-Confirmation Debtor or TruPS Trustees, as applicable, to make distributions pursuant to the Plan, (ii) subject to Section 9.3 of the Plan, permit the TruPS Trustees to maintain its TruPS Trustee Charging Lien, (iii) subject to Section 9.3 of the Plan, permit the TruPS Trustees to maintain any right to indemnification, contribution, subrogation or other claim it may have under the TruPS Documents, including the TruPS Indenture, (iv) permit the TruPS Trustees to appear in the Bankruptcy Case, and (v) permit the TruPS Trustees to perform any functions that are necessary in connection with the foregoing clauses.

B.     If the record holder of a note or securities is HARE & CO. or its nominee or another securities depository or custodian thereof, and such notes or securities are represented by a global security held by or on behalf of HARE & CO. or such other securities depository or custodian, then the beneficial holder of such note or securities shall be deemed to have surrendered such holder's security, note, debenture or other evidence of indebtedness upon surrender of such global security by HARE & CO. or such other securities depository or custodian thereof.

5.5.     **Claims.**  The Post-Confirmation Management shall deposit the Proceeds in the Creditor Distribution Account which shall be used to fund payments required under the Plan.

A.     **Estimation of Unliquidated Contested Claims**.  As to any unliquidated Contested Claim, including Claims based upon rejection of Executory Contracts, or other Contested Claims, the Bankruptcy Court, upon motion by Debtor, may estimate the amount of the Contested Claim and may determine an amount sufficient to reserve for any such Claim. Any person whose Contested Claim is so estimated shall be paid by Debtor only up to an amount not to exceed the estimated amount of such Contested Claim, even if such Contested Claim, as finally allowed, exceeds the maximum estimated amount thereof.

B. **Allowance of Contested Claims**. Distributions shall be made with respect to any Contested Claim which becomes an Allowed Claim after the Effective Date on or as soon as practicable after the date on which each such Contested Claim becomes an Allowed Claim. The amount of such distribution shall be calculated on a Pro Rata basis, so that the subject Claim receives an initial distribution equal to the total percentage distributions made prior to the date of such allowance on other Allowed Claims in its Class. No interest shall be payable to the holders of Contested Claims on account of funds reserved by Debtor, if any, under this Plan to satisfy such Contested Claims.

C. **Unclaimed Distributions**. Pursuant to § 347(b) of the Bankruptcy Code, all unclaimed distributions made under the Plan shall be held by the Post-Confirmation Management and redistributed to Holders of Class 3 on a Pro Rata basis.

5.6. **Means of Cash Payment.** Cash payments made pursuant to this Plan shall be paid by checks drawn on an account maintained by Post-Confirmation Debtor.

5.7. **Distribution**.

A. Distribution of proceeds under the Plan shall be made in accordance with the Plan and the Confirmation Order. Distributions on account of Allowed Class 2 Claims shall be made to the applicable TruPS Trustees who will, promptly upon satisfaction of Section 9.3 of the Plan, pay such amounts in accordance with Section 3.4 of the Plan through the facilities of HARE & CO. in accordance with (i) the customary practices of HARE & CO., and (ii) the Plan, the Confirmation Order and the applicable TruPS Documents, including the TruPS Indenture.

B. The applicable TruPS Trustee acting as disbursing agent pursuant to clause (A) above shall only be required to act and make distributions in accordance with the terms of the Plan and the Confirmation Order and shall have no (i) liability for actions taken in accordance with the Plan or in reliance upon information provided to it in accordance with the Plan or (ii) obligation or liability for distributions under the Plan to any party who does not hold a Claim against Debtor or the Reorganized Debtor as of the Effective Date or who does not otherwise comply with the terms of the Plan and the Confirmation Order.

5.8. **Effect of Appeals.** Unless the Confirmation Order is stayed pending appeal, at the option of Debtor, this Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely service of filing a motion under Bankruptcy Rule 7052, 8002, 8003, 8015, 9023 or 9024.

## ARTICLE 6
## CLAIMS RESOLUTION

6.1. **Deadline for Filing of Administrative Claim.**

A. Any person asserting an Administrative Claim (other than a Professional Fee Claim or fees assessed under 28 U.S.C. § 1930 shall file an application therefore with the Bankruptcy Court not later than forty-five (45) days after the Effective Date in accordance with 11 U.S.C. § 503(b) and applicable Rules.

B.     Any Person asserting a Professional Fee Claim shall file a fee application with the Bankruptcy Court not later than sixty (60) days after the Effective Date for professional services rendered and out-of-pocket costs incurred through the Effective Date.

C.     Any Administrative Claim or Professional Fee Claim not filed within the deadlines set forth above shall be forever barred, and Debtor shall be discharged of any obligation on such Claim.

D.     Objections to Administrative Claims shall be filed in the time set by the Bankruptcy Court.  All Administrative Claims which are not allowed in the Plan shall be Allowed Administrative Claims only to the extent allowed by the Bankruptcy Court in a Final Order.

6.2.   **Exclusive Right of Debtor to Object to Claims.**  As of the Effective Date of the Plan, Post-Confirmation Debtor shall have the exclusive right to file, serve and prosecute objections to Claims.

6.3.   **Time Limit for Filing Objections to Claims**

A.     Objections to Claims (other than Administrative Claims or Professional Fee Claims) shall be filed with the Bankruptcy Court and served upon each holder of the Claims to which objections are made not later than the Claims Objection Bar Date, or such later date as the Bankruptcy Court may order with respect to a particular Claim or group of Claims.

B.     The resolution of any objection to a Claim shall be governed by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order or such provisions as may be established by the Bankruptcy Court.

C.     Any Claim as to which an objection is not timely filed shall be deemed an Allowed Claim, unless an extension of the Claims Objections Bar Date is obtained from the Bankruptcy Court in accordance with Rule 9006 or by agreement regarding any particular Claim or the allowance of such claim is reconsidered in accordance with § 502(j) of the Bankruptcy Code.

6.4.   **Late Claims.**  No Distribution shall be made on account of any Claims filed after the Bar Date, unless specifically allowed by Final Order of the Bankruptcy Court after notice and opportunity for hearing.

## ARTICLE 7
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.   **Assumption and Rejection of Executory Contracts**.  On the Effective Date and except as otherwise provided in this Plan, all Executory Contracts that have not been the subject of a motion or order to assume and/or assign during the course of the Bankruptcy Case or pending the occurrence of the Effective Date, shall be deemed rejected by Debtor as of the Petition Date.  This Plan shall be deemed to constitute a motion to approve the above-described rejection and entry of an order confirming this Plan shall constitute approval of such rejection.

534457v5

7.2. **Claim for Rejection Damages**. All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of (i) the date of the Bankruptcy Court order approving Debtor's rejection of such executory contract or unexpired lease, or (ii) the Confirmation Date. Any claims not filed within such time shall be forever barred against Debtor and the Estate and any such Claims shall be disallowed in full.

## ARTICLE 8
## CONDITIONS PRECEDENT TO CONFIRMATION; CONSUMMATION OF THE PLAN; AND OUTSIDE DATE

8.1. **Conditions to Confirmation.** The following are conditions precedent to the occurrence of the Confirmation Date: the entry of **(a)** an Order finding that the Disclosure Statement contains adequate information pursuant to § 1125 of the Bankruptcy Code, and **(b)** the Confirmation Order in form and substance acceptable to Debtor, which shall provide, among other things, that Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan.

8.2. **Conditions to Effective Date.** This Plan shall be binding on all creditors, Equity Interest Holders and other parties in interest on the date that following are conditions precedent occur which date is the Effective Date:

   A.    The Conditions to Confirmation shall have occurred;

   B.    The approval by the Board of Governors of the Federal Reserve System for the payments to Class 2 and the TruPS Trustee Fees in accordance with Section 9.3; and

   C.    The completion of the Offering in which the amount of Proceeds raised are sufficient to fund payments to Allowed Administrative Claims, the Allowed Claims of Class 2 and the TruPS Trustee Fees.

8.3 **Outside Date**. If the Effective Date has not occurred on or before the Outside Date, then the Plan shall be deemed void and of not further effective and the rights and obligations of all parties in interest shall be reinstated as they exist immediately before the Petition Date, provided however, that Debtor may extend the Outside Date for 90 days by filing a written notice with the Court and providing notice thereof to all parties in interest.

## ARTICLE 9
## GENERAL PROVISIONS

9.1. **Vestment**. The occurrence of the Effective Date shall automatically vest in the Post-Confirmation Debtor all property of the Estate free and clear of all liens except as otherwise provided for in the Plan.

9.2. **Payment of Statutory Fees**. All fees payable pursuant to § 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid on

or before the Effective Date and shall continue to be paid thereafter in the ordinary course until entry of a Final Decree in accordance with § 1930.

9.3. **Payment of Certain Fees and Expenses.**  Prior to or as soon as reasonably practicable following the Effective Date, Reorganized Debtor shall pay in Cash the sum of $65,000 to the TruPS Trustees (i) without defense, offset or reduction, (ii) without application or approval of the Bankruptcy Court, and (iii) without a reduction to the $320,000 payment to holders of TruPS Capital Securities pursuant to Section 3.4 of the Plan, as compromise and satisfaction of the TruPS Trustee Fees.  Nothing herein shall be deemed to impair, waive, discharge or negatively impact any TruPS Trustee Charging Lien, provided, however, that upon satisfaction of the TruPS Trustee Fees in the amount of $65,000, the TruPS Trustees shall not be entitled to assert the TruPS Trustee Charging Lien against any distributions to Holders of Allowed Class 2 Claims.

9.4. **Modifications and Amendments**.  Debtor may alter, amend, or modify the Plan or any Plan exhibit in accordance with the Bankruptcy Code.

9.5. **Retention of Jurisdiction**.  The Court shall retain jurisdiction over the Bankruptcy Case and related core and non-core proceedings, for the following purposes:

(a)    To hear and determine any and all objections to the allowance of claims or Equity Interests;

(b)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan;

(c)    To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which Debtor is party, and to hear and determine any and all claims arising therefrom;

(d)    To hear and determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or that the Post-Confirmation Debtor may bring subsequent to the Effective Date or to which Debtor or the Post-Confirmation Debtor may be made a party;

(e)    To consider any modifications of the Plan, to remedy and defect or omission or reconcile any inconsistency in the Plan or in the orders of the Bankruptcy Court, including the Confirmation Order;

(f)    To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan;

(g)    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor or the Post-Confirmation Debtor;

(h)     To issue orders in aid of execution of the Plan as contemplated by § 1142 of the Code; and

(i)     To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

9.6.    **Discharge of Debtor**.  On the Effective Date, Debtor shall be discharged to the extent provided in Bankruptcy Code § 1141.

9.7.    **Release of Liens, Etc.**  On the Effective Date, all liens, encumbrances and security interests upon or against any property of Debtor not properly perfected, except for liens and encumbrances specifically confirmed or affirmed pursuant to the terms of the Plan or by subsequent order of the Bankruptcy Court, shall be terminated, discharged, voided or released.

9.8.    **Exculpation, Limitation of Liability and Releases**

A.     Neither Debtor, the Senior Debt Parties, holders of the TruPS Capital Securities (including without limitation, the Bondholders), the TruPS Trustees, nor any of their respective predecessors and present or former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, the Bankruptcy Case, formulating, negotiating or implementing the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, the Confirmation of the Plan, or the administration or implementation of the Plan or the property to be distributed under the Plan, except for their willful misconduct in connection with, relating to, arising out of, the Bankruptcy Case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

B.     Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtor, the Senior Debt Parties, holders of the TruPS Capital Securities (including without limitation, the Bondholders) or the TruPS Trustees or any of their respective predecessors or present or former members, officers, directors, employees, advisors or attorneys, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of, the Bankruptcy Case, formulating, negotiating or implementing the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, the Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct.

C.     Effective on the Effective Date, Debtor and the Estate releases any and all claims or causes in action, known or unknown, against the Senior Debt Parties, the TruPS

Trustees, holders of the TruPS Capital Securities (including without limitation, the Bondholders) and their respective officers, directors, employees, attorneys and agents, except for their willful misconduct.

9.9.   **Headings**.  The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

9.10.   **Severability**.  If, prior to the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.11.   **Notices**.  All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.   All communications will be deemed delivered when received at the following addresses, including email:

**To the Debtor at:**

First Flo Corporation
ATTN:  Douglas L. McClure
5940 Buttermere Drive
Colorado Springs, Colorado 80906
Office:  719/784-6316
Email:  dmcclure@rmbt.net

**With a copy to**:

SHAPIRO BIEGING BARBER OTTESON LLP
ATTN:  Duncan E. Barber, Esq.
7979 East Tufts Avenue, Suite 1600
Denver, Colorado 80237
Telephone:  720/488-0220
Email:  dbarber@sbbolaw.com

**To a holder of an Allowed Claim:**

To such holder at the addresses set forth on the Schedules unless such creditor files a proof of claim, in which case, the address in the proof of claim shall control.  Holders of Allowed Claims may change such address by filing such change with the Bankruptcy Court and delivering notice thereof to Debtor and Debtor's counsel.

9.12. **Successors and Assigns**. The Plan will be binding upon Debtor, any Creditor affected by the Plan, Equity Interest Holders, and their heirs, successors, assigns and legal representatives.

9.13. **Unclaimed Payments**. If a person or entity entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided as set forth in paragraph 9.10, within one (1) year of the date of such distribution, the person or entity is deemed to have released Debtor and abandoned any right to such payment or distribution under the Plan and Reorganized Debtor shall retained the funds represented by such unclaimed distribution.

## ARTICLE 10
## REQUEST FOR CONFIRMATION

10.1. **Confirmation**. Debtor, as proponent of the Plan, will request confirmation of the Plan pursuant to 11 U.S.C. §§ 1129(a) and (b), following commencement of the Case. Debtor will seek approval of the Disclosure Statement at the time Debtor requests confirmation. In the event Debtor does not obtain the necessary acceptances of its Plan, it may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. § 1129(b). The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or interests that is impaired and has not voted to accept the Plan.

DATED:  December 17, 2018.

**FIRST FLO CORPORATION**

By:___/s/ Dale E. Pike_____
    Name:  Dale E. Pike
    Title:  Authorized Agent

**APPROVED AS TO FORM**:

SHAPIRO BIEGING BARBER OTTESON LLP
Duncan E. Barber, 16768
Julie Trent, #17086
7979 East Tufts Avenue, Suite 1600
Denver, Colorado 80237
Telephone:  (720) 488-0220
Fax:  (720) 488-7711
Email:  dbarber@sbbolaw.com
      jtrent@sbbolaw.com
Attorneys for Debtor

**Exhibit 1**
**To Plan of Reorganization**

**Plan of Offering**

The Offering will commence on the Confirmation Date.  Following the occurrence of the Confirmation Date, Debtor will transmit notice of the Offering to all Equity Interests together with an election form, in form and substance as Exhibit 2 to this Plan ("Offering Election").

In the Offering, each Equity Interest will receive a right that will entitle the holder to a basic subscription right ("Basic Right") and an oversubscription right ("Oversubscription Right").  A Basic Right entitles its holder to retain Debtor's Common Stock by paying $2,217.82 per share[1] of Debtor's Common Stock currently held.  Equity Interests may exercise their Basic Rights by submitting the Offering Election exercise form and the purchase price for the shares being retained within 14 calendar days of the mailing of the Offering Election for the Basic Rights (the "Basic Rights Expiration Date").  Investors electing not to retain their shares of Debtor's Common Stock will have such shares cancelled on the books and records of Debtor effective on the Basic Rights Expiration Date.

Under the Oversubscription Right, each Participating Investor exercising its Basic Rights in full will have the right to subscribe for additional shares of Debtor's Common Stock to the extent not retained by other holders of the Basic Rights.

Participating Investors who exercise their full Basic Rights will be notified in writing (the "Oversubscription Notice") within seven (7) calendar Days after the Basic Rights Expiration Date and may then exercise their Oversubscription Rights by submitting the oversubscription rights exercise form and the purchase price for Debtor's Common Stock being purchased under the Oversubscription Right within seven (7) calendar Days of the mailing of the Oversubscription Notice ("Oversubscription Expiration Date").  Debtor's Common Stock than it has available for such oversubscriptions, Debtor will allocate the available shares on a pro-rata basis to each Participating Investor of an Oversubscription Right.

The subscription rights may not be sold, transferred, or assigned, and will not be listed for trading on any stock exchange.

---

[1] This amount assumes the amount to be raised in the Offering is $425,000.00 and is calculated as follows: 425,000.00 divided by 191.63, which is the number of shares outstanding as of the Petition Date. The $425,000.00 figure will be adjusted at the time of the Offering to reflect actual Administrative Claims, which are assumed to be $40,000.00 in this example.  That amount may increase or decrease based on the course of the Chapter 11 case.

**Exhibit 2**
**To Plan of Reorganization**

**Offering Election**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FIRST FLO CORPORATION | ) | Case No.  18- |
| EIN: 84-0725524 | ) | |
| | ) | Chapter 11 |
| Debtor | ) | |
| | ) | |

**OFFERING ELECTION**

1.       [Insert name of Equity Interest holders], the undersigned shareholder (the "Shareholder"), intending to be legally bound, hereby irrevocably applies to purchase from Debtor the amount of shares of Common Stock ("Shares") indicated below.  This subscription for the Shares is submitted to Debtor in accordance with and subject to the terms and conditions described herein and as described in the Plan of Reorganization dated December17, 2018, filed by First Flo Corporation (the "Plan"), the Disclosure Statement of the Debtor dated December 17, 2018 ("Disclosure Statement"), and the Order Confirming the First Flo Plan of Reorganization (the "Confirmation Order" and collectively with Plan and Disclosure, the "Plan Documents"). Capitalized terms not defined herein shall have the meaning given them in the Plan Documents. Please check item 3 or 4 below.

2.       Shareholders failing to complete, sign and deliver this Election Form to Debtor on or before [insert actual date which will be the Basic Rights Expiration Date] will be deemed to be a Non-Participating Investor pursuant to Item 3 below.

3.       ☐  Shareholder elects to be a **Non-Participating Investor** in this Offering and any shares of Common Stock or Equity Interests in Debtor owned by Shareholder will be cancelled on the Debtors records.

4.       The Shareholder elects to be a **Participating Investor** as follows:

☐  Shareholder elects to exercise its Basic Rights to subscribe for _____ Shares
(Shareholder is eligible to subscribe for a maximum of [insert number of Shareholder's shares] Shares under this Basic Right).

☐  Shareholder elects to exercise the Oversubscription Right
(Shareholder may only elect the Oversubscription Right if Shareholder has elected to exercise the full amount of its Basic Rights above.  The specific amount of Shares eligible to be subscribed for under the Oversubscription Right will not be available until the Basic Rights Expiration Date.)

Shareholder electing to exercise the Basic Rights and the Oversubscription Right represents, warrants and covenants as follows:

- Shareholder has received the Plan Documents, has carefully reviewed those Documents and understands and has relied on the information contained therein in making his, her or its decision to invest in the Shares;

- Shareholder has had a reasonable opportunity to ask questions of and receive answers from a person or persons acting on behalf of Debtor concerning the offering of the Shares, and all such questions have been answered to the full satisfaction of the Shareholder;

- Shareholder acknowledges and agrees that an investment in the Shares involves a number of significant risks, including those set forth under the caption "RISK FACTORS" in the Disclosure Statement and generally in the other Plan Documents and the Shareholder understands each of these risks and is willing to accept such risks by making an investment in the Shares;

- Shareholder has adequate means of providing for the Shareholder's current needs and personal contingencies, is able to bear the substantial economic risks of an investment in the Shares for an indefinite period of time, has no need for liquidity in such investment, at the present time, could afford a complete loss of such investment;

- Shareholder represents that he, she or it has discussed the suitability of this investment with his or her personal legal, financial, investment, tax, and other advisors to the extent the Shareholder has determined it appropriate to do so and after such discussion, acknowledges and agrees that the investment in the Shares is a suitable investment for the Shareholder; and

- Shareholder must deliver the Purchase Price no later than [insert date which is Oversubscription Expiration Date.  The Purchase Price will be delivered to First Flo Corporation as follows:  [insert].

**To exercise your Basic Rights, you must complete and return this Offering Election on or before _____ ___, 2019, so that it is received by 5:00 p.m. Denver, Colorado time.**

**Sending this Offering Election via email to dbarber@sbbolaw.com is acceptable.**

TYPE OR PRINT NAME:_____

SIGNED:_____

(IF APPROPRIATE) BY:_____

AS (TITLE):_____

ADDRESS:_____

PLEASE SEND ORIGINAL TO:        ATTN:  Duncan E. Barber

                                SHAPIRO BIEGING BARBER OTTESON LLP

                                7979 East Tufts Avenue, Suite 1600

                                Denver, CO  80237

                                Telephone:  (720) 488-0220

                                Facsimile:   (720) 488-7711